UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

PAJOR L. ROBERTSON              *         CIVIL ACTION

VERSUS                          *         NO: 05-6363

JO ANNE B. BARNHART,            *         SECTION: "D"(4)
COMMISSIONER OF SOCIAL
SECURITY


                         **ORDER AND REASONS**

   Before the court is the Plaintiff's **"Objection to Magistrate's Report and Recommendation" (Doc. No. 30).** The Defendant, Michael J. Astrue, Commissioner of Social Security Administration, filed a memorandum in opposition.  The Objection, set for hearing on Wednesday,  October 24, 2007, is before the court on briefs, without oral argument.  Now, having considered the memoranda of counsel, the record, and the applicable law, the court **OVERRULES** Plaintiff's Objection and **ADOPTS** the Magistrate Judge's Report and Recommendation, as its own, but (1) with the correction of a typographical error and (2) with the addition to the following reasoning.

                                1.

   The court corrects the first sentence in the second full

paragraph on page 9, of the Magistrate Judge's Report and Recommendation (Doc. No. 19), with the addition of the word "<u>not</u>" so that the sentence should read as follows:

> The record supports the ALJ's finding that the conclusion of the cardiologist of March 25, 2004 [the checklist, TR. 110] was <u>not</u> supported by the medical evidence contained in the administrative record.

2.

Contrary to Plaintiff's argument, the court finds that the ALJ properly considered and weighed Plaintiff's medical records from Plaintiff's treating physician, Dr. Vasanth Bethala, in rendering his decision that Plaintiff is not disabled and can perform sedentary work.[1]  In **June 1994**, Plaintiff had an echocardiogram which showed mild mitral valve prolapse and normal left ventricular function. (TR. 145). Dr. Bethala's records indicate that he saw Plaintiff on June 22, 1998, and his impressions were: (1) suspect mitral valve prolapse; and (2) palpitations associated with

---

[1] Plaintiff describes Dr. Bethala as a cardiologist. The court notes that the letter head on Dr. Bethala's records states "Cardiology Institute" and among other doctors in this group, Dr. Bethala is listed as "Varanth Bethala, M.D., F.A.C.P., F.A.C.C." (*See e.g.* TR. 114). The Transcript also includes information that Dr. Bethala graduated from medical school in India, and that his primary specialty is "general surgery" and his secondary specialty is "internal medicine." (TR. 111). The "primary specialty" and "secondary specialty" terms are both described as "indicat[ing] a self-designated specialty which is not equivalent to nor does it imply ABMS board certification or special training or competence." (*Id.*).

2

prolapse. (TR. 127-28). Dr. Bethala saw Plaintiff again on July 30, 1998 for palpitations, and his progress notes indicate "mitral valve prolapse" and he started her on Kerlone. (TR. 126).

On September 18, 1998, Plaintiff saw Dr. Bethala for occasional episodes of dizziness and weakness, and Dr. Bethala's progress notes indicate "mitral valve prolapse" and "recurrent dizziness, suspect neurogenic component." (TR. 125). On October 16, 1998, Plaintiff saw Dr. Bethala. He stated in his progress notes that Plaintiff "has been doing fairly well with much improvement in her daily spells [...] She has no episodes of syncope." (TR. 123).

Plaintiff saw Dr. Bethala **_some two years later_** (on February 1, 2000), complaining of "atypical chest pain" and he recommended a stress test. (TR. 122). On February 9, 2000, Plaintiff had a "graded treadmill exercise test," which showed: (1) abnormal EKG response to exercise; (2) very low level exercise capacity; (3) chest tightness occurred during the study. (Tr. 143). However, no sustained arrhythmia occurred during the study. (TR. 143). And there was a negative perfusion study for diagnosis of ischemia and normal ventricular function. (TR. 144).

On February 11, 2000, Dr. Bethala notes that Plaintiff had an "episode of severe chest pain and passed out for about 10 minutes while at the register at Delchamps." (TR. 121). He notes that

she had a "Myocardial Perfusion study," which "did not demonstrate any evidence of ischemia." (*Id.*) But Dr. Bethala "encouraged" Plaintiff to have a "coronary angiogram to rule out any anomalous coronary arteries that could be causing spasms, et cetera." (*Id.*). There is no indication in the record that Plaintiff had an angiogram.

On April 11, 2000, Plaintiff again saw Dr Bethala and he reported that she "has been doing a lot better [...] She had only one episode of near syncope but no syncope noted." (TR. 120). And again on May 9, 2000, Dr. Bethala reported that Plaintiff "is feeling very well with no occurrence of any syncope" and she is "tolerating [Kerlone] well." (TR. 119).

On April 5, 2001, Plaintiff was seen in the emergency room with "acute right-sided chest pain." (TR. 146-47). Her cardiac examination was reported as: "Regular rate and rhythm without murmurs, rubs, clicks, or gallops." (TR. 146). She was told to follow up with Dr. Bethala. (*Id.*).

Dr. Bethala's records indicate that Plaintiff saw Dr. Bethala ***almost two years later*** on March 21, 2003, in his office, with Plaintiff complaining of pain in the left breast region. (TR. 92, 118). Dr. Bethala's impression was: (1) suspect costochondritis; and (2) history of mitral valve prolapse. (*Id.*). Dr. Bethala noted that "[Plaintiff's] EKG shows bradycardia and early

repolarization changes, otherwise negative" and her cardiac examination had "no distinct S3 gallop [and] normal S1 and S2." (*Id.*).

On April 21, 2003, Plaintiff saw Dr. Bethala complaining of low back pain and chest wall pain. (TR. 86, 117). Dr. Bethala recommended that Plaintiff have an ultrasound of her kidneys and treated her with Bextra. (*Id.*). Plaintiff has a normal renal ultrasound on April 26, 2003. (TR. 129-31).

On August 1, 2003, Dr. Bethala diagnosed Plaintiff with costochondritis and dyspepsia, but there was no distinct S3 or gallop. (TR. 83, 116). He treated her with Volaten XR, and also started her on Prevacid or Protonix for her gastritis. (*Id.*).

**Plaintiff filed her disability claim on August 5, 2003, claiming that her disability began on July 5, 2003, which is apparently the last day she worked. (TR. 38-40).**

On or about October 29, 2003, Dr. Anthony Scardino (board certified in Internal Medicine, TR. 109), a state agency doctor, completed an "Onal Capacity Assessment" and found "mult. medical complaints with normal examinations except for tenderness of left chest to palp; EKGs and renal U/S are normal, ADLs not sign. restricted." (TR. 106). He concluded that "Claimant's allegations are not credible." (*Id.*).

On December 18, 2003, Dr. Bethala reported Plaintiff

complained of weak spells and dizziness and was "having near syncopal episodes." (TR. 115). He also notes that Plaintiff was to start "back on Kerlone ... She has been taken off because she lost her Medicaid card and stopped it over the time." (*Id.*).

On March 25, 2004, Dr. Bethala saw Plaintiff again and wrote in his progress notes:

> [Plaintiff[ is here for follow up. **She has been doing reasonably well. She is seeing a disability lawyer and seeking a follow up evaluation. Questionnaire has been filled our regarding her symptomatology.** She also complains of right upper quadrant pain. There is no specific trauma to this on and off for about 3 days duration.

(TR. 114, emphasis added).

Her cardiac examination on March 25, 2004, revealed "no gallop, normal S1, S2." (*Id.*). Dr. Bethala's impression was: (1) mitral valve prolapse; (2) near syncope; (3) chest pains; and (4) right upper quadrant pain. (*Id.*).[2]

On the "questionnaire" dated March 25, 2004 (and referenced in his March 25, 2004 progress notes), Br. Bethala affirmatively "checked" the following:

1. She suffers periodic episodes during which she experiences symptoms of mitral valve prolapse.

---

[2] **Dr. Bethala's medical records end with Plaintiff's March 25, 2004 office visit.** However, there is a notation that on July 12, 2004, Plaintiff made another appointment to see Dr. Bethala on August 3, 2004. (TR. 113). The hearing before the ALJ was July 23, 2004.

      2.     The symptoms of the episodes include:

           a.   chest pains

           b.   nausea

           c.   weakness

      3.     During periods when she is symptomatic, she experiences relatively minor episodes perhaps twice a month, on average.

      4.     These minor episodes ordinarily persist for two or three days.

      5.     During these episodes, she is too ill to work.

      6.     About every other month, on average, she experiences more severe episodes.

      7.     During these episodes, in addition to the symptoms aforementioned, she experiences difficulty breathing.

      8.     These episodes ordinarily persist for about a week.

      9.     During these episodes, she spends most of her day in bed.

(*See* completed checklist, TR. 110).

On or about April 13, 2004, Plaintiff was referred to Dr. Dasarathy Srinivas (Gastroenterology and Hepatology) by Dr. Lucas and Dr. Bethala.[3] (TR. 156). Plaintiff's chief complaints to Dr. Srinivas were chest pain and abdominal pain. (*Id*.). On April 15, 2004, Plaintiff had an abdominal CT which indicated

---

       [3]     Dr. Lucas is not identified in the record.

"Cholelithiasis" and "hepatic cysts." (TR. 155). On April 26, 2004, Plaintiff underwent an ultrasound of the gallbladder which also revealed "Cholelithiasis." (TR. 154). On April 27, 2004, Dr. Srinivas performed an esphagogastroduodenoscopy", from which Dr. Srinivas' impression was: (1) gastritis; (2) esophagitis; (3) and gallstones. (TR. 153). Dr. Srinivas also stated that: "The patient will be closely followed up and may require a cholecystectomy at a later date and this will be discussed with the patient in the office." (*Id*.). Although the ALJ states in his opinion that "[i]n May of 2004 [Plaintiff] had surgery to remove gallstones, (TR. 18), Plaintiff states in the papers she submitted to the Social Security Administration that she will need surgery to remove her gallstones. (TR. 71).

Plaintiff's hearing before the ALJ was July 23, 2004. (TR. 175-86). Plaintiff testified that her "mitral valve prolapse, murmur and palpitations" are the medical problems that have prevented her from working. (TR. 180).

After hearing the testimony of Plaintiff and considering all of the evidence before him, the ALJ issued his Decision denying Plaintiff's Application for Supplemental Security Income and finding that the combined effect of Plaintiff's impairments (including her mitral valve prolapse) would not prevent her from performing sedentary work. (TR. 17-20). This court finds that the

ALJ's Decision is supported by substantial evidence[4] and it comports with relevant legal standards.  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

In his Decision, the ALJ gave "little weight" to the checklist questionnaire (TR. 110) completed by Plaintiff's treating physician, Dr. Bethala, apparently at the request of Plaintiff's representative.  (TR. 18). The ALJ reasoned that: "[t]he doctor states no objective basis, and the record does not support any objective basis, for the limitations described [on the checklist, TR. 110]."  (TR. 18).

Following this court's review of the record, the court concludes that the ALJ's decision to give "little weight" to Dr. Bethala's opinion as expressed through this checklist (TR. 110), is supported by the evidence.[5]  And, despite Plaintiff's argument to

---

[4] "Substantial evidence is more than a scintilla and less than a preponderance."  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[5] While the opinions of a claimant's treating physicians are "entitled to great weight," the ALJ can decrease reliance on treating physician testimony for "good cause."  *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

"Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.'"  *Id.*; *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. 404.1527(d)(3)("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

the contrary, the court finds that the ALJ was not required to re-contact Dr. Bethala (pursuant to 20 C.F.R. §404.1512(e)) for clarification or additional evidence because the record in this case was fully and fairly developed, and the ALJ's decision is supported by substantial evidence. *Newton*, 209 F.3d at 458. Plaintiff has also failed to show that additional evidence would have been produced if the ALJ had requested additional information, and that the additional evidence might have led to a different decision. *Id.*

Accordingly;

---

Here, the court rejects Plaintiff's argument that the ALJ gave "no weight" to Dr. Bethala's findings. Having considered all of Plaintiff's medical records and other evidence before the ALJ, the ALJ gave "little weight" to the subject checklist questionnaire for lack of an objective basis. There is no evidence in the record that Dr. Bethala ever ordered Plaintiff to restrict her activity. Plaintiff's **echocardiogram**, **performed in 1994,** revealed only mild mitral valve prolapse and normal **cardiac function, and** Plaintiff worked in a sedentary job until **July 2003**. Plaintiff's **treadmill test**, **performed in 2000,** showed "negative perfusion study for diagnosis of ischemia and normal left ventricular function." (TR. 144). And while this treadmill test showed an abnormal EKG response to exercise, very low level exercise capacity, and chest tightness occurring during the study, Plaintiff again worked in a sedentary job up to July 2003, and there is no evidence that Dr. Bethala ever restricted Plaintiff's work activity based on these treadmill test results.

The court concludes that the ALJ had good cause to give "little weight" to the subject checklist questionnaire (TR. 110) that Dr. Bethala completed in March 2004. Further, in his findings, the ALJ either explicitly or implicitly considered each of the factors of 20 C.F.R. §404.1527(d)(2) (namely, the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source) before giving little weight to the checklist completed by Dr. Bethala, and thus remand is not necessary. *Newton*, 209 F.3d at 456.

The court **AFFIRMS** the ALJ's decision (which is the final decision of the Commissioner of Social Security) denying Plaintiff's application for Supplemental Security Income Benefits.

New Orleans, Louisiana, this **6th** day of **November, 2007.**

```
_____
       A.J. McNAMARA
  UNITED STATES DISTRICT JUDGE
```